**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STEPHEN M. BARRIENTEZ,　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　Petitioner,　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　vs.　　　　　　　　　　　　 )　　　　Case No. 4:19-CV-3407 SRW
　　　　　　　　　　　　　　　　　　 )
PAUL BLAIR,[1]　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　Respondent(s).　　　　　　 )

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Stephen Barrientez for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.     BACKGROUND**

On June 22, 2015, Petitioner used a replica firearm to rob a First Bank branch in Farmington, Missouri of $5,050. He fled from the police in his vehicle but crashed into a utility pole and overturned. In May 2016, a jury convicted Petitioner of first-degree robbery. The Circuit Court of St. Francois County sentenced him to life imprisonment. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed his convictions. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court

---

[1] Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. *See Missouri Dept. Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited March 12, 2021). Paul Blair is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

## II.    STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.   DISCUSSION

Petitioner asserts four claims for relief in his Petition: (1) the trial court abused its discretion in admitting into evidence his out-of-state conviction; (2) the trial court erred in sustaining the State's objection to Petitioner's counsel's voir dire questions regarding Petitioner's right not to testify; (3) Petitioner received ineffective assistance of counsel when his trial counsel failed to investigate his mental competency to stand trial due to his brain injury; and (4) Petitioner received ineffective assistance of counsel when his trial counsel failed to object to the State's comments during closing argument that Petitioner used a gun with a silencer on it that appeared to be a real gun.

### A.   Claim One—Admission of Out-of-State Conviction

In his first claim for relief, Petitioner argues that the trial court abused its discretion in admitting into evidence his out-of-state conviction. According to Petitioner, the conviction was improperly authenticated under Missouri Revised Statute § 490.130, because only the clerk, not

the judge, certified the conviction. Petitioner does not argue this alleged error violates the United States Constitution.

The Missouri Court of Appeals held that Petitioner's claim about the lack of certification by a judge under § 490.130 was not preserved for appeal because Petitioner did not raise this foundational defect at trial. The court further opined that even if Petitioner had raised this defect, Petitioner was not prejudiced by the admission of this out-of-state conviction:

> Suffice it to say, even if we had, it is patently obvious that he has not shown any prejudice by the admission of this prior conviction and the resulting persistent offender status, much less the manifest injustice or miscarriage of justice required to reverse for plain error. Even if he was not a persistent offender by virtue of two or more prior felonies, Defendant would still be a "prior offender" by virtue of his one prior felony for robbery, and sentencing would still have been properly removed from the jury based on that status. *State v. Taborn*, 412 S.W.3d 466, 474 (Mo. App. W.D. 2013). Though a defendant's status as "persistent offender" can enhance sentencing—by subjecting the defendant to sentencing under a higher classification of crime—no such enhancement was available here for the Class A felony of robbery in the first degree because it is already in the highest class of crimes and subject to the highest range of punishment.

(ECF No. 13-5, at 4-5).

Petitioner's challenge of the state court's decision only concerns a matter of state law; therefore, this Court cannot review the state court's decision. Admissibility of evidence is a matter of state law and ordinarily will not form a basis for federal habeas relief in absence of alleged constitutional violations. *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994); *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993); *see also Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th

4

Cir. 1996)). Here, Petitioner does not raise a due process claim, nor does the Court find the state court's ruling so prejudicial as to deprive Petitioner of due process. Therefore, the Court will not review the state court's decision regarding its application of Missouri rules and statutes. The Court will deny Petitioner's first claim.

### B.  Claim Two—Voir Dire Questions

In his second claim, Petitioner alleges the trial court erred in prohibiting defense counsel from asking questions during voir dire about whether jurors would believe Petitioner was guilty if he refused to testify. Petitioner raised a similar claim on direct appeal, where he argued that the trial court erred in sustaining the State's objection to the defense's voir dire questions regarding Petitioner's right not to testify.

The relevant questions were:

Q [Defense counsel]: . . . And then we have the opportunity as a defense to put on evidence. With that being said, [Defendant] has a Fifth Amendment right to testify and a Fifth Amendment right to not testify. Okay. Now, the law says, there's an instruction that says, under the law a defendant has the right not to testify. No presumption may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify. Did everybody hear that?

(No response.)

Q: Okay. Is there anybody that can't follow that oath?

(No response.)

Q: In other words, if he—if he doesn't testify, would you think he's hiding something? Or if he does testify, would you think—juror number?

[Prosecutor]: I'm going to object. This is an improper question, Judge.

THE COURT: The objection is sustained. The question is simply, understanding that that is or may be the instruction that you get, understanding that the defendant has an absolute constitutional right not to testify, that you may not draw any kind of an inference. The question is will you follow that instruction, or do you refuse to consider a verdict of not guilty unless he testifies. Did you hear me?

VENIREMAN WILFONG: No. I don't refuse.

5

THE COURT: Thank you.

Q [Defense counsel]: Does anybody need [Defendant] to testify?

[Prosecutor]: Objection, Judge. This is an improper question again.

THE COURT: Again, the question is whether or not the jury will follow the instruction or if they are not able to follow that instruction.

Q [Defense counsel]: Can everybody follow that instruction? (No response.)

Q: Seeing nods of heads.

(ECF No. 13-5, at 5-6).

In denying Petitioner's claim, the Missouri Court of Appeals stated that the trial court has

discretion to judge the appropriateness of voir dire questions, and found:

> Counsel was actually only precluded from asking "if [Defendant] doesn't testify, would you think he's hiding something?" and "[d]oes anybody need [Defendant] to testify?" But the venire panel was asked several other times if they would follow the instruction telling them they could not draw any inference from a defendant's decision not to testify: first by counsel at the outset of this line of questioning, then by the court after it sustained the first objection and then again after it sustained the second objection, which was reiterated by counsel. At no point did anyone on the panel indicate they could not follow that instruction. Thus this area was sufficiently explored and resolved in a way that ensured none of the jurors drew an inference of guilt from Defendant's decision not to testify here.

(ECF No. 13-5, at 7).

A criminal defendant's right to an impartial jury arises from both the Sixth Amendment

and principles of due process. *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976). "Voir dire plays a

critical function in assuring the criminal defendant that his [constitutional] right to an impartial

jury will be honored." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (internal quotation marks

omitted) (quoting *Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion)).

"The Constitution does not always entitle a defendant to have questions posed during voir dire

specifically directed to matters that conceivably might prejudice [the venire panel] against him."

*Ristaino*, 424 U.S. at 594 (citing *Ham v. South Carolina*, 409 U.S. 524, 527-28 (1973)). The trial

6

court retains great latitude in deciding what questions should be asked on voir dire. *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991); *United States v. Ortiz*, 315 F.3d 873, 888 (8th Cir. 2002). Importantly, a federal habeas court's authority to review how voir dire is conducted during a state criminal trial is "limited to enforcing the commands of the United States Constitution." *Mu'Min*, 500 U.S. at 422. The trial judge acts within the Constitution in determining that the demands of due process could be satisfied by a more generalized, but thorough inquiry. *Ristaino*, 424 U.S. at 598.

The Court of Appeals' decision is entitled to deference. Petitioner's constitutional right to an impartial jury was not violated. The trial court only sustained the State's objection after the defense counsel repeatedly asked if the venire panel understands that Petitioner has a right not to testify and that no presumption may be raised if Petitioner so chooses. As the Court of Appeals stated, the venire panel was asked several times whether they would follow the instruction that they could not draw any inference from a defendant's decision not to testify: twice by the defense counsel before the first objection, once by the court after the first objection, and again by the defense counsel after the second objection. The issue of potential bias was sufficiently explored, and at no point did anyone on the panel indicate they did not understand or could not follow the instruction.

The trial court's rulings did not impair Petitioner's constitutional rights, and the decision of the Missouri Court of Appeals neither incorrectly nor unreasonably applied "clearly established Federal law." The Court will deny Petitioner's second claim.

### C.   Claim Three—Mental Competency to Stand Trial

In his third claim, Petitioner alleges that he received ineffective assistance of counsel when his trial counsel failed to investigate his mental capacity to stand trial. Petitioner argues

that he lost his memory due to the brain injury he received from the post-robbery vehicle crash, which affected his competency to stand trial and assist in his defense. Petitioner claimed, at the time of the trial, he could not remember the events preceding the vehicle crash, including robbing the bank. He asserts his trial counsel failed to obtain the Arizona hospital records showing the extent of his injuries and to seek a competency examination.

Motion counsel obtained the Arizona hospital records and submitted those records to the state court. (ECF No. 14, at 63-103). During his deposition for the PCR motion, Petitioner testified that, even though he received no further treatment, he had recovered his competency. *Id.* at 170. He stated, "There's nothing wrong with me now." *Id.* Motion counsel also advised the Missouri Court of Appeals that Petitioner had recovered his memory, and no competency evaluation was conducted during the postconviction case. (ECF No. 13-7, at 19 n.3).

The Missouri Court of Appeals denied Petitioner's claim finding the motion court did not clearly err in concluding that nothing in the record suggested Petitioner had a mental condition affecting his ability to stand trial. The Court of Appeals explained:

> "In order to prove that trial counsel was ineffective by failing to investigate a defendant's mental competence, sufficient facts must be shown that indicate a questionable mental condition that should have caused counsel to investigate the defendant's mental state." *Nelson v. State*, 372 S.W.3d 892, 895 (Mo. App. E.D. 2012). "If trial counsel honestly believes that his client lacks the present capacity to rationally understand and cooperate, he has a duty to investigate the client's mental condition." *Id.* "However, this duty does not exist when the defendant appears to be able to 'consult rationally with the attorney and understand the court proceedings.'" Id. (quoting *Holman v. State*, 88 S.W.3d 105, 111 (Mo. App. E.D. 2002)). "This duty is not triggered unless there is some suggestion that the defendant is mentally unstable." *Id.*

> In his Amended Motion, Movant claimed that he had informed Counsel that he suffered a traumatic brain injury from the post-robbery vehicle crash and that, although he wanted to testify at trial, "he was still suffering from the effects of his traumatic brain injury[, and] he did not feel he could adequately express his thoughts or respond to questioning." Movant thus argued that Counsel was ineffective because in failing to obtain the Arizona hospital records showing the

extent of his injuries and failing to seek a competency examination, Movant "was forced to go to trial in an impaired condition," which was "inherently prejudicial."

In denying the Amended Motion, the motion court determined that Counsel was not ineffective because nothing in the record suggested that Movant had a questionable mental condition. The motion court's findings and conclusions are not clearly erroneous.

At the evidentiary hearing, Counsel testified that Movant did not advise him of any ongoing health problems following the vehicle collision or direct him to any medical records post-collision that led him to believe that Movant was not competent to stand trial. To the contrary, Counsel explicitly testified that Movant "had no difficulty in talking to [him] or anything like that," and therefore, he "had no concerns whatsoever as to [Movant's] competency." Counsel further testified that he did not believe Movant's decision not to testify was related to his memory loss. In determining that Counsel did not render ineffective assistance, the motion court relied upon Counsel's testimony that Movant did not give him sufficient reason to question Movant's competency to stand trial, and we defer to the "motion court's superior opportunity to judge the credibility of the witnesses," particularly where the motion court here also presided over Movant's trial, during which time Movant did not raise the issue of his competency. *Id.* (quoting *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991)).

(ECF No. 13-9, at 6-7).

The Court of Appeals' decision is entitled to deference. 28 U.S.C. § 2254(d). In order to prevail on an ineffective-assistance-of-counsel claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): he must show that (1) his counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and that (2) "the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." When evaluating counsel's performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A court is not required to address both components of the effective assistance of counsel inquiry if a petitioner makes an insufficient showing on one component. *Id.*

at 697. Establishing that a state court's application of *Strickland* was unreasonable under §
2254(d) is even more difficult. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Since the
standards created by *Strickland* and § 2254(d) are both highly deferential, when the two apply in
tandem, deference is doubled. *Id.*

Trial counsel's failure to request a competency hearing can be objectively unreasonable if
evidence raised substantial doubt about Petitioner's mental competence to stand trial. *Ford v.
Bowersox,* 256 F.3d 783, 786 (8th Cir. 2001) (citing *Drope v. Missouri,* 420 U.S. 162, 181
(1975)). "'The focus of a competency inquiry is the defendant's mental capacity; the question is
whether he has the *ability* to understand the proceedings.'" *Id.* (quoting *Godinez v. Moran,* 509
U.S. 389, 401 n.12 (1993) (emphasis original)).

Here, the decision of the Missouri Court of Appeals neither incorrectly nor unreasonably
applied "clearly established Federal law." Petitioner has not established his trial counsel's
performance was deficient by failing to investigate his mental condition. Motion counsel
obtained the Arizona medical records Petitioner claims his trial counsel did not review. Motion
counsel submitted these records to the state court for the PCR hearing and appeal. Motion
counsel also advised the state court that Petitioner's memory had improved and did not conduct a
competency examination for the PCR hearing.

The Court of Appeals included detailed factual findings and correctly deferred to the
motion court's determination that nothing in the record suggested Petitioner had a questionable
mental condition. This determination was supported by trial counsel's testimony at the
evidentiary hearing that Petitioner did not advise him of any ongoing health problems following
the vehicle collision, had no difficulty in talking to him, and did not give him sufficient reason to
question Petitioner's competency to stand trial.

Petitioner did not show clear and convincing evidence rebutting the state court's factual findings. The trial counsel's credibility as a witness is not for this Court, a federal habeas court, to review. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). Therefore, the Court will deny Petitioner's third claim alleging his counsel was ineffective in failing to investigate his mental competency.

### D.   Claim Four—State's Comments During Closing Argument

In his fourth claim, Petitioner states he received ineffective assistance of counsel when his trial counsel failed to object to the State's comments during closing arguments that Petitioner used a gun with a silencer on it that appeared to be a deadly weapon, even though the State knew it was a toy gun. Petitioner argues that his counsel's failure to object caused the jury to believe the gun was real.

The Missouri Court of Appeals summarized the relevant statements in the State's closing argument as follows:

> During closing argument, the State noted several times that "this is one of those cases where there's literally zero doubt left." In support, the prosecutor referred the jury to a surveillance video from the bank that had been entered into evidence, which showed Movant, at the time of the robbery, lift up his shirt to show a bank teller, Rachel Crites ("Rachel"), the replica firearm he placed in his waistband. The prosecutor explained, "[w]e know that he went in there. We have a video that shows you he went in there." The prosecutor also referenced Rachel's testimony that, when Movant demanded money from her, he threatened her with a replica firearm that she believed was real despite owning firearms herself. As to the replica firearm's appearance, the prosecutor referred the jury to the replica firearm, which had been entered into evidence, and again noted Rachel's testimony that she believed it was real. The prosecutor also emphasized Detective Jeffrey Crites' testimony that he observed the firearm after Movant was apprehended and also did not realize that it was a replica until after he picked it up. Thereafter, the prosecutor noted that the replica firearm did not have "the orange on the end" like on "fake guns you see," and instead "looks like a silencer [is] on it." The prosecutor explained that it is "supposed to look like a real weapon" and provided that "I own firearms, and I couldn't tell from looking at this that it's not" real. Counsel objected to none of these statements.

(ECF No. 13-9, at 8-9) (internal footnote omitted).

11

The Court of Appeals denied Petitioner's claim and reasoned:

> In turn, Movant's claim that the prosecutor improperly vouched for Rachel's credibility by commenting that he owned firearms and believed the replica was real, and that it looked like a silencer was on it, is unavailing. The State "is allowed to argue the evidence and all reasonable inferences from the evidence during closing argument." "This wide latitude includes allowing the State to argue the credibility, or lack thereof, of witnesses as long as these arguments are based on the evidence." "Closing arguments must be interpreted with the entire record rather than in isolation." Here, the prosecutor's remarks amounted to an argument that Rachel was not lying when she testified that she believed the replica firearm was real because even firearm owners could be convinced that it was authentic. Prosecutors have "the right, within the limits of closing argument, to provide the State's view on the credibility of witnesses," and the comments at issue here were reasonable inferences regarding the credibility of Rachel drawn from the evidence presented. This evidence included the very firearm at issue, and the jury was in a position to view it for itself to determine whether to believe Rachel's testimony. Movant cannot show that he suffered prejudice as a result of Counsel's failure to object to the prosecutor's comments. The motion court did not clearly err in denying the Amended Motion.

(ECF No. 13-9, at 10-11) (internal citations omitted).

The Court of Appeals' decision is entitled to deference. When reviewing a claim of ineffective assistance of counsel premised on a failure to object to the prosecutor's closing argument, the question is whether the prosecutor's comments were so improper that counsel's only defensible choice was to interrupt them with objection. *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994). "Whether to object during opposing counsel's summation to the jury is a matter of trial strategy[.]" *Dansby v. Hobbes*, 766 F.3d 809, 836 (8th Cir. 2014). Ordinarily, strategic decisions are "virtually unchallengeable unless they are based on deficient investigation." *Id.*; *see also Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006).

Once again, the decision of the Missouri Court of Appeals neither incorrectly nor unreasonably applied "clearly established Federal law." Here, trial counsel's decision not to object to the State's comments was not deficient or prejudicial. First, as the Court of Appeals stated, the State's comments that Petitioner used a gun that appeared to be real were made in the

12

context of arguing for the credibility of the witness, Rachel Crites, the bank teller to whom

Petitioner showed his replica gun. The State argued Ms. Crites was not lying when she testified

that she thought Petitioner's replica firearm was real, which goes to the element of first-degree

robbery that "the defendant displayed or threatened the use of what appeared to be a deadly

weapon." The State is entitled to provide its view on the credibility of witnesses during closing

argument, and can draw reasonable inferences from the evidence presented, the State's

comments were not improper. Therefore, it was not deficient for the trial counsel not to object.

Additionally, as trial counsel testified at the PCR hearing, he did not object to the State's

comments because he wanted the State to lock themselves into those comments. He wanted the

jury to look at the surveillance video, which they did. (ECF No. 13-6, at 17-19). The trial counsel

made a strategic decision not to object, and strategic decisions are virtually unchallengeable.

Second, trial counsel's decision not to object did not prejudice Petitioner. The State made

clear in its closing argument that Petitioner did not use a real firearm by stating, "[y]ou take a

close-up look at [the gun] and examine it, like Detective Crites was able to do, then you're going

to see that it's not a real gun," and "if you examine it and you're able to look at it, then you know

it's not a real firearm." With or without objection, the State's comments would not lead a

reasonable jury to believe Petitioner's gun was real. Therefore, the Court will deny Petitioner's

fourth claim.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Stephen Barrientez for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Stephen Barrientez's Petition is

**DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a

constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 18th day of March, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**

14